GEORGE P. POLY & another[1] *vs.* MICHAEL T. MOYLAN & others.[2]

Essex. March 4, 1996. - July 11, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Civil,* Judgment notwithstanding verdict, Judicial discretion, New trial. *Attorney at Law,* Malpractice, Negligence. *Federal Tort Claims Act. Deceit. Negligence,* Causing loss of consortium. *Jury and Jurors. Constitutional Law,* Fair trial. *Consumer Protection Act,* Unfair or deceptive act.

The plaintiff in a legal malpractice action brought against defendant attorneys for alleged improper handling of a prior action against the United States Air Force (USAF) did not demonstrate that the claim against the USAF was not barred by the discretionary function exception to the Federal Tort Claims Act and the judge correctly granted the defendants' motion for judgment notwithstanding the verdict. [145-147]

The plaintiff in a legal malpractice action did not sustain his burden of proving the collectibility of a judgment in the underlying case that was allegedly mishandled [148], and with respect to one attorney the evidence established that the plaintiff knew that attorney had withdrawn from the case with the permission of the court while the plaintiff's claim was still viable [148]: the judge correctly allowed the defendants' motion for judgment notwithstanding the verdict.

At the trial of a civil action the plaintiff did not establish that his alleged damages resulted from the alleged misrepresentation or deceit of the defendant. [148-149]

Where the plaintiff in a legal malpractice action did not demonstrate that he had a valid claim in the underlying action, there was no error in the judge's reducing to nothing the damages awarded by the jury nor was there any error in the judge's excluding evidence proffered by the defendant which supported his claim against the attorney for deceit, with respect to the underlying claim. [149]

In a legal malpractice action in which the jury found that the plaintiff's wife did not suffer a loss of consortium related to the defendants' alleged negligence, the judge properly reduced to nothing the damages awarded by the jury. [149-150]

There was no error of law or abuse of discretion in a Superior Court judge's denial of a plaintiff's motion for new trial based on the alleged

[1]Maureen S. Poly. When we refer to a single plaintiff, we mean the principal plaintiff, George P. Poly.

[2]Thomas E. Cargill, Jr., and Cargill Associates.

bias of the trial judge, to which the plaintiff had not objected at trial nor demonstrated on appeal. [150]

A Superior Court judge did not abuse his discretion in denying a civil plaintiff's motion for new trial. [150]

Evidence at the trial of a G. L. c. 93A claim supported the judge's findings and conclusion that the defendants were not liable and the judge did not abuse his discretion in denying the plaintiff's motion for a new trial. [151]


CIVIL ACTION commenced in the Superior Court Department on July 18, 1991.

The case was tried before *John P. Forte,* J., sitting under statutory authority, and an amended motion for a new trial was heard by *Joseph A. Grasso, Jr.,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Ronald I. Bell* (*Scott A. Bell* with him) for the plaintiffs.

*Allen N. David* (*Harvey Weiner* with him) for Michael T. Moylan.

*Laurence Field* for Thomas E. Cargill, Jr.

LYNCH, J. This appeal arises in an action by George P. Poly (plaintiff) and Maureen S. Poly (plaintiff's wife) against the defendants because of their alleged improper handling of a prior action against the United States Air Force (USAF), the plaintiff's former wife, Janet C. Gillis, and her husband, Air Force Sergeant Earl J. Gillis. On appeal the plaintiff argues that: (1) the trial judge erred in allowing the defendants' motion for judgment notwithstanding the verdict; (2) the judge erred in ruling that the USAF would not have been liable in the underlying tort claim; (3) the judge's biased conduct violated the plaintiff's right to a fair and impartial trial; (4) he is entitled to a new trial because a newly discovered private reprimand by the Board of Bar Overseers confirms an employee relationship between Moylan and Cargill; and (5) the judge erroneously decided that the defendants had no liability under G. L. c. 93A (1994 ed.).

1. *Procedural history.* The plaintiff filed this action against his former lawyer, Michael T. Moylan, and Moylan's employer during part of the period at issue, Thomas E. Cargill, Jr., and Cargill Associates. The complaint alleged: (1) negligence and breach of contract; (2) misrepresentation and

deceit; (3) unfair or deceptive acts or practices under G. L. c. 93A; and (4) the plaintiff's wife's claimed loss of consortium.

The case, except for the G. L. c. 93A count, was then tried before a jury, resulting in a verdict for the plaintiff. In response to special questions, the jury found that Moylan had been negligent, and had misrepresented material facts to the plaintiff, and that the plaintiff would have prevailed both against the Gillises and the USAF. The jury also found that Cargill did not have control over Moylan in regard to the plaintiff's case and that the plaintiff's wife suffered no loss of consortium. The judge found that neither defendant had committed any unfair or deceptive act, and therefore dismissed the G. L. c. 93A claim and awarded both defendants their costs.

He then allowed Moylan's motion for judgment notwithstanding the verdict on the malpractice count; reduced the damages from $10,000 to $295 on the misrepresentation and deceit count; and denied the plaintiffs' motion for a new trial on the G. L. c. 93A count. Another Superior Court judge denied the plaintiffs' motion for a new trial on the malpractice, misrepresentation and deceit counts. The plaintiffs and Moylan cross-appealed. We granted the plaintiffs' application for direct appellate review.

2. *The underlying tort claims.* We summarize the evidence in the light most favorable to the plaintiff. As a result of a divorce, Janet Gillis, the plaintiff's former wife, was awarded custody of their two sons with the plaintiff's having visitation rights. In 1979, Sgt. Earl Gillis, her then husband, was reassigned from Pease Air Force base in New Hampshire to Ramstein Air Force Base in Germany. The USAF allowed Janet Gillis and the children to join Sgt. Gillis in Germany.

On April 9, 1979, the plaintiff had obtained an order in the Middlesex Probate Court prohibiting Janet Gillis from removing the children from their home in Lee, New Hampshire. On April 13, 1979, the plaintiff sought and obtained a temporary custody order. The plaintiff then went to Lee and Pease Air Force Base in an unsuccessful attempt to find Janet Gillis and the children. At Pease Air Force Base, the plaintiff presented a copy of the temporary custody order to a USAF officer in the Judge Advocate General's Corps. On April 18, 1979, the plaintiff provided the USAF with another copy of the custody order.

On October 31, 1979, the Probate Court awarded permanent custody of the boys to the plaintiff. In 1980, criminal arrest warrants for kidnapping were issued against the Gillises. The USAF was notified of these warrants.

In May, 1983, and May, 1985, the USAF approved Sgt. Gillis's request to extend his tour of duty in Germany. In July, 1987, after the Gillises returned with the children to the United States they were found guilty of kidnapping under G. L. c. 265, §. 26A (1994 ed.), and fined $2,550. Janet Gillis was found in contempt of the October 31, 1979, judgment and fined $500.

While the Gillises were in Germany with the boys in middle to late 1984, the plaintiff engaged Moylan. In January, 1985, Moylan presented an administrative claim to the USAF under the Federal Tort Claims Act (FTCA). The USAF denied the claim, contending that all acts allegedly committed by its personnel took place in Germany and that the FTCA did not apply under the foreign country exception.

In July, 1985, Moylan filed a complaint against the Gillises and the USAF in the United States District Court. Despite the USAF's prior successful invocation of the FTCA's foreign country exception, Moylan did not draft the complaint to emphasize the actions of USAF personnel in the United States.

In January, 1986, the USAF moved to dismiss on the basis of the foreign country exception. Moylan did not discuss the motion to dismiss with the plaintiff, and unilaterally decided not to oppose it. The United States District Court dismissed the plaintiff's claims against the USAF, noting that no opposition had been submitted and that all of the actions by the United States that formed the basis of this complaint occurred in a foreign country.

Moylan had not served the complaint on the Gillises for over 120 days. As a result, the United States District Court ordered Moylan to show cause why service had not been made. At the show cause hearing, Moylan failed to recognize or to argue that Fed. R. Civ. P. 4 (m) (1995) provides more than 120 days for service on defendants outside of the United States. The District Court dismissed the complaint against the Gillises on February 26, 1986. Subsequent to the dismissal, Moylan learned that service had been properly made, but did not move to vacate the dismissal.

In 1988, Moylan filed a second complaint against a USAF

official and the Gillises, this time in the Superior Court, alleging intentional infliction of emotional distress and a violation of the Massachusetts Civil Rights Act (G. L. c. 12, § 11I [1994 ed.]).[3] This second complaint was dismissed against the government (as substituted defendant) on the ground that the statute of limitations had expired.

Moylan failed to inform the plaintiff that his action in the United States District Court had been dismissed, and that the action in the Superior Court had also been dismissed against the government. He also failed to answer the plaintiff's questions, never sent documents relative to the status of the case, and avoided the plaintiff's calls. The plaintiff did not learn about the two dismissals until 1991. Moylan also failed to inform the plaintiff that he had decided to stop using an investigator in the case.

After the plaintiff sued Moylan in July, 1991, Moylan moved to withdraw from the case against the Gillises in the Superior Court. This motion was allowed in March, 1992. Moylan conducted no discovery in either case. The Superior Court case was finally dismissed in November, 1993.

3. *Count I: legal malpractice.* In view of the allowance of Moylan's motion for judgment notwithstanding the verdict, we inquire whether, on any reasonable view of the evidence, there is a combination of facts from which a rational inference may be drawn in the plaintiff's favor. *Sullivan* v. *Brookline,* 416 Mass. 825, 826 (1994), and cases cited.

In a legal malpractice action a plaintiff who alleges his attorney was negligent in the prosecution of a claim will prevail if he proves that he probably would have obtained a better result had the attorney exercised adequate skill and care. *Fishman* v. *Brooks,* 396 Mass. 643, 647 (1986). "[F]ormer clients suffer a loss due to an attorney's negligence only if that negligence is shown to have made a difference to the client." *Jernigan* v. *Giard,* 398 Mass. 721, 723 (1986).

(a) *The case against the USAF and the discretionary function exception.* The defendants argue that the case against the USAF could not have been won because the claim was barred by: (1) the discretionary function exception to the FTCA; (2)

---

[3]The plaintiff characterizes the second lawsuit as having been frivolously brought by Moylan, as the statute of limitations had run and insufficient facts were alleged to support a civil rights violation.

the foreign country exception to the FTCA; (3) the fact that Moylan was not retained until the statute of limitations had run; and (4) insufficient evidence of intent. We agree with the defendants that the claim was barred by the discretionary function exception to the FTCA. We do not reach the other arguments.

The discretionary function exception of the FTCA prohibits recovery where the alleged tort is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680 (a) (1994).

Whether conduct falls under the discretionary function exception is a question of law. See *Hart* v. *United States,* 894 F.2d 1539, 1544 (11th Cir.), cert. denied, 498 U.S. 980 (1990); *Garcia* v. *United States,* 826 F.2d 806, 809 (9th Cir. 1987).[4] The United States Supreme Court has provided a two-step test for applying the discretionary function exception. *Berkovitz* v. *United States,* 486 U.S. 531, 536 (1988).[5] The court must first determine whether the governmental actor had discretion to decide which course to follow and, if so, whether the exercise of that discretion involves policy making or planning. *United States* v. *Gaubert,* 499 U.S. 315, 323 (1991).

Federal law at the time at issue did not obligate the USAF to return enlisted personnel from overseas because of court orders or even criminal warrants. 10 U.S.C. § 814 (the military may or may not deliver members for trial). A member of the armed forces stationed abroad and accused of an offense by civil authority may be delivered, on request, to the civil authority for trial. See 32 C.F.R. §, 884.3; 32 C.F.R. § 884.4 (d). This is "permissive only." *Jennings* v. *Markley,* 186 F. Supp. 611, 613 (S.D. Ind. 1960), aff'd, 290 F.2d 892 (7th Cir. 1961). Therefore, the USAF had discretion to return the Gillises to the United States.

---

[4] The plaintiff argues that the judge in instructing the jury erred in placing the burden on the plaintiff to show that the discretionary function exception did not apply. As the jury found for the plaintiff on this issue, any error was harmless.

[5] As we have concluded that the discretionary function exception to the Massachusetts Torts Claims Act, G. L. c. 258, § 10 (*b*) (1994 ed.), is guided by the same exception in the FTCA, our analysis of cases applying Massachusetts law are also relevant. *Harry Stoller & Co.* v. *Lowell,* 412 Mass. 139, 142-143 (1992).

It is more difficult to determine whether that discretionary conduct involves policy making or planning. *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 141 (1992), discussing *Berkovitz* v. *United States, supra*. The plaintiff's military witness testified that, in making the decision on a request to return military personnel, the over-all USAF policy was to act in the best interest of the country and the USAF.[6] Whether an act is in the best interests of the United States is a matter of policy.[7] The decision of the USAF, therefore, was grounded in policy as required by the second part of the discretionary function exception.

As the Supreme Court has stated:

"When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. . . . The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."

*United States* v. *Gaubert, supra* at 324-325. Because operational decisions are included within the discretionary function exception, *id.* at 334, even the initial act of permitting Sgt. Gillis to leave this country with his wife's children falls within the exception. The judge acted properly in allowing the defendants' motion for judgment notwithstanding the verdict on the claim asserted against the USAF.

---

[6]There was also evidence offered by the defendants that the USAF had a clear policy of neutrality with regard to child custody disputes. We disregard the neutrality issue and focus on the undisputed policy that all discretionary decisions were to be made in the best interests of the United States and the USAF.

[7]Regulations issued subsequent to this case indicate that now the official policy is that in a parental kidnapping case, the USAF is to encourage their military personnel to cooperate with civil authorities and then possibly withdraw command sponsorship. 32 C.F.R. § 884.5 (1995). There is no requirement for either of those actions. The plaintiffs cite to *Harry Stoller & Co.* v. *Lowell, supra* at 141, for the proposition that, when conduct involves carrying out previously established policies or plans, then the governmental entities should not be immune. Since there was no clear policy established, this case does not apply.

(b) *The plaintiff's claim against the Gillises.* The judge entered judgment for Moylan and Cargill notwithstanding the verdict, first, because the plaintiff did not submit any evidence of the collectibility of a judgment against the Gillises; and second, because the plaintiff knew that Moylan had withdrawn from the Superior Court case while there was still a viable claim.

A plaintiff in a legal malpractice action asserting negligence in the handling of his claim in the underlying action bears the burden of showing that he would have been able to collect on the judgment obtained in the underlying case. *Jernigan* v. *Giard*, 398 Mass. 721, 723 (1986). He may only collect from the defendant lawyer what he could have collected from the defendant in the underlying act, but for the attorney's negligence. *Id.* See also Barry, Legal Malpractice in Massachusetts: Recent Developments, 78 Mass. L. Rev. 74, 81 (1993).

Although there was evidence that Sgt. Gillis was employed by the USAF at the time, there was no evidence on the state of his finances. He could have had secured obligations equal to or in excess of his income as a USAF Sergeant. Income is not a measure of ability to pay without an assessment of debts. Many, if not most, insolvents have some income. There was no evidence whatsoever pertaining to the income or financial condition of Janet Gillis. The plaintiff failed to sustain his burden of proving the collectibility of the judgment against the Gillises.

Moylan withdrew with court approval from the action pending in the Superior Court on March 25, 1992. The claim was not dismissed against Janet Gillis until August, 1992, and was not dismissed against her husband until November 2, 1993. Therefore, when Moylan withdrew from the case with court permission after notice to the plaintiff, there was still a viable case pending against the Gillises and it was still possible to proceed with discovery and investigation. There was no evidence of damage occurring to the plaintiff as a result of Moylan's conduct in that action up to the time of his withdrawal.

4. *Misrepresentation and deceit.* The plaintiff argues that the judge erroneously limited evidence of damages resulting from Moylan's misrepresentation or deceit, gave incorrect jury instructions on damages, and erroneously reduced the damages awarded by the jury.

(a) *Jury instructions, evidence, and award on misrepresentation*. The jury found that the plaintiff sustained damages of $10,000 as a result of Moylan's misrepresentation. The judge reduced the damages award to $295, ruling that the plaintiff could only recover his out-of-pocket expenses which the judge found to be filing fees paid on the Federal case.

The jury could have found that Moylan failed to tell the plaintiff that his Federal District Court action against the USAF and the Gillises had been dismissed on February 26, 1986. The jury could have also found that Moylan did not inform the plaintiff of his decision to stop using an investigator to interview witnesses and gather evidence after October, 1988. There was no evidence that Moylan's deceit caused the dismissal of the Federal action. Therefore, the filing fee did not relate to the alleged deceitful acts. Proof of damages flowing from misrepresentations is essential to recovery. *Cardullo* v. *Landau*, 329 Mass. 5, 7 (1952). "Where a plaintiff does not prove that he is worse off than if there had been no misrepresentation he has not made out a case of deceit." *Connelly* v. *Bartlett*, 286 Mass. 311, 315 (1934).

The only other evidence of direct damage incurred by the plaintiff was that he spent about $10,000 from 1979 to 1987 in his attempt to get his children back. However, this evidence was restricted without objection to apply only to the underlying claim against the USAF. Because we conclude that the claim against the USAF could not have been won, there could be no damages arising from any misrepresentations concerning its dismissal.

For this same reason the plaintiff cannot succeed in his argument that the judge erroneously excluded correspondence, newspaper articles, and testimony which supported his allegation that Moylan never told him that the Federal case against the USAF had been dismissed.

(b) *Loss of consortium claims*. The jury concluded that the plaintiff's wife did not suffer a loss of consortium related to the defendants' negligence. Therefore, no damage could arise from Moylan's conduct in regard to the loss of consortium claim. Furthermore, the argument that Moylan was negligent in failing to bring a loss of consortium claim on behalf of the plaintiff's wife in the underlying claim was not properly presented as a theory of recovery at trial. An appeal is not the proper time to advance new theories of recovery. See *Commonwealth* v. *George*, 406 Mass. 635, 636 n.4 (1990).

Finally, because the plaintiff's wife was not a party to the underlying tort action and was not a client of Moylan, he could not be liable for her loss of consortium claim.

(c) *Judicial bias generally.* The plaintiff claims that the judge was unfairly biased against him from the beginning, thus violating his constitutional right to a fair and impartial jury trial. The motion judge, who was not the trial judge, denied the plaintiff's motion for a new trial on this ground. We will not reverse the lower court's denial of a new trial motion absent an error of law or abuse of discretion. *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 520-521, cert. denied, 493 U.S. 894 (1989). There was no such error or abuse.

During the trial, the plaintiff did not object or move for a mistrial on the ground of judicial bias, nor did he move for disqualification or recusal of the judge. Although this does not necessarily mean there was no bias, we do take this into consideration when viewing the record. *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 846 (1980). In addition, the plaintiff on appeal has failed to point out in any concrete way how the judge's conduct might have harmed him apart from the judge's decisions already discussed. See *Commonwealth* v. *Armand*, 411 Mass. 167, 171 (1991).

5. *Case against Cargill.* The jury concluded that Cargill did not have the right to exercise control over Moylan's handling of the plaintiff's case after January, 1986.[8] There was more than adequate evidence to support this finding, and the plaintiff does not argue otherwise. He argues instead that he is entitled to a new trial because of new evidence, namely a private reprimand issued in 1987 by the Board of Bar Overseers regarding a case handled by Moylan in 1982 and 1983 before his affiliation with Cargill following which an employee of Cargill acted as a monitor of Moylan's practice. The judge denied this motion.

A motion for a new trial is addressed to the sound discretion of the judge. *Robertson* v. *Gaston Snow & Ely Bartlett, supra* at 520. The reprimand makes no mention of Cargill and does not suggest he had the right to control Moylan's actions in the underlying action. There was no abuse of discretion.

---

[8]The date when Moylan became an associate of Cargill.

6. *General Laws c. 93A.* In a separate bench trial, the judge concluded that the defendants' actions or omissions did not constitute unfair or deceptive acts or practices in violation of G. L. c. 93A. The plaintiffs moved for a new trial which was denied. We review to determine whether this denial was an abuse of discretion. The judge found that:

> "even if [Moylan] was negligent in his research (not noting that [USAF] personnel assignments required approval by a Texas command), this does not give rise to a G. L. c. 93A violation nor did this result in a deceptive act. Further, [Moylan's] quote of a normal contingent fee of $1/3$ of recovery before he knew a suit would be commenced under the FTCA, which permits only a 25% fee, did not amount to an unfair or deceptive act or practice especially when no fee was ever charged or paid. In addition, I find at no time did Moylan deceive Poly. That although the defendant was negligent, he did not engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

"[A] judge may make independent and, therefore, different, findings on the c. 93A aspect of a case that arises from the same facts which gave rise to parallel common law claims." *Wyler* v. *Bonnell Motors, Inc.,* 35 Mass. App. Ct. 563, 567 (1993). The evidence adequately supports the judge's findings. There was no abuse of discretion.

*Conclusion.* The judgment notwithstanding the verdict on the malpractice claim is affirmed. The damages under the deceit claim are vacated, and the denial of damages under G. L. c. 93A is affirmed.

*So ordered.*