Gershengorn, J.
The plaintiff Stephen Joseph Mc-lsaac (“Mclsaac”), has brought this action alleging that the defendant, Attorney Anna Chiccarelli (“Attorney Chiccarelli”), conducted legal malpractice and misrepresentation[1] during her representation of him in a divorce and custody proceeding, as well as in an abuse prevention order proceeding. Attorney Chiccarelli now moves for summary judgment on all counts. For the reasons set forth below, Attorney Chiccarelli’s motion for summary judgment on all counts is ALLOWED.
BACKGROUND
The undisputed facts establish the following. On February 12, 1998, Mclsaac retained Attorney Chiccarelli to represent him in a divorce and custody matter before the Middlesex Probate Court (“Probate Court”), and to defend an abuse prevention order complaint brought by Mclsaac’s wife in the Brighton District Court (“District Court”). On April 2, 1998, fifiy days later, Mclsaac discharged Attorney Chiccarelli as his counsel, and retained as successor counsel, Attorney David Grayer (“Attorney Grayer”). Thereafter, Attorney Chiccarelli filed with the Probate Court a motion to withdraw her appearance for Mclsaac. Attorney Grayer remained as Mclsaac’s attorney until September 9, 1999, when Mclsaac entered a pro se appearance.
Probate Court
In September 1997, prior to Attorney Chiccarelli’s appearance, Mclsaac’s wife, Diane Mclsaac, filed a complaint for divorce in the Probate Court alleging cruel and abusive treatment and irretrievable breakdown of the marriage. Diane Mclsaac also requested temporary custody of the couple’s four-year old daughter, Maiy McIsaac (“Mary”), along with permission to move herself and her daughter to Connecticut. On November 6, 1997, the Probate Court granted Diane Mclsaac custody, but allowed Mclsaac visitation pursuant to their agreement.
During Attorney Chiccareili’s representation of Mc-lsaac there were child support and custody issues before the Probate Court. On March 17, 1998, the Probate Court entered a temporary order requiring Mclsaac to pay child support in the amount of $222.37 per week. At that same hearing, Attorney Chiccarelli requested from the Probate Court that a guardian ad litem be appointed to determine the well-being of Mary. The Probate Court granted her motion and appointed Gerald Koocher, Ph.D. (“Dr. Koocher”), as the guardian ad litem.
On May 5, 1998, after Attorney Chiccarelli was discharged from representing Mclsaac, Dr. Koocher recommended that Diane Mclsaac be granted physical custody of Mary, and that joint custody would not be *739 successful because the parties could not “engage in collaborative co-parenting of Maiy.” The divorce hearing was scheduled for three days from September 15, 1998, to September 17, 1998. On the third day, the parties came to an agreement but Mclsaac reneged on the agreement when he was before the Probate Court judge. Later, Mclsaac changed his mind and requested that the Probate Court accept the agreement. The Probate Court refused his request because the judge believed that Mclsaac’s consent was not trustworthy. On September 21, 1998, the Probate Court completed the hearing and entered its own judgment of divorce (“Judgment”).
The Judgment granted Diane Mclsaac sole legal and physical custody of Maiy and allowed her to move to Connecticut. The Judgment also provided that the parties attempt to work toward shared legal custody. Mclsaac was given physical custody of Maiy eveiy other weekend from Thursday at 6:00 p.m. through Monday at 6:00 p.m., as well as three weeks of physical custody during the summer, and a division of custody during the holidays. Regarding child support, Mclsaac was ordered to pay $200 per week and to provide Maiy with medical and dental insurance, as well as life insurance having a net value of $150,000 for the benefit of Mary.
Since the Judgment, there has been a substantial amount of post-litigation. Beginning in October 28, 1998, and continuing through the months that followed, Diane Mclsaac filed complaints for child support, and the Probate Court issued many orders ordering that Mclsaac make the child support payments. Mclsaac also filed many modification complaints seeking to vacate the divorce decree and to modify the visitation schedule. In March 1999, Mcl-saac filed an appeal of the divorce decree. Mclsaac requested that the Probate Court enter findings, and the Probate Court agreed.[2] Mclsaac entered approximately 200 miscellaneous papers for the Probate Court’s review. According to Justice Sheila B. McGovern, who presided over the findings, Mclsaac submitted papers that included
copies of correspondence of father to wife’s lawyers, letters of wife’s lawyers, commenting on the case by father, and references to testimony from the numerous hearings. Such correspondence, which disparages the Judge, his wife, his wife’s counsel and his own counsel, was forwarded in duplicate to the Judge in violation of the cannon [sic] of ethics that a Judge is not to receive ex parte communications from a party in a case. Father’s documents are replete with quotes and citations to case law.
On July 12, 1999, Judge McGovern concluded in her findings that the interaction between Mclsaac and his wife, “is stressful and is volatile, and that husband is verbally abusive, and obsessive in his quests.” Regarding the child support payments, the Probate Court noted that based on Mclsaac’s job skills, “income was imputed to him . . . with the promise that the Court would lower the child support once he was fully employed in good faith, if his income warranted it, but father has failed to follow through with obtaining meaningful employment.” The Probate Court also concluded that on the visitation issue, the original visitation order had to be modified because of “the continued conflict between the parties, because father was using this as a crutch not to get on with his life and to avoid meaningful employment, and to give him time for a full work week for employment.”
On September 24, 1999, Mclsaac sought relief from the Judgment alleging: denial of due process; violation of his First Amendment rights; violation of the Eighth Amendment; peijuiy and fraud by Diane Mclsaac; peijuiy and fraud by opposing counsel; prejudice of the judge; abuse of discretion of the judge; and misconduct of his counsel. He also sought relief from the child support order which he alleged was excessive. On October 28, 1999, this motion was denied by the Probate Court. Mclsaac filed an appeal which was subsequently denied. On. September 22, 2000, in response to another of Mclsaac’s motions to modify the Judgment, the Probate Court (Boorstein, J.) held that since the child was now living in Connecticut, it declined to have “any further jurisdiction over the custody and visitation of the child.”
Abuse and Prevention Order
On March 5, 1998, two weeks after Attorney Chiccarelli began representing Mclsaac, Diane Mcl-saac filed an ex parte complaint for an Abuse Prevention Order (“Order”) against Mclsaac in District Court. The complaint was heard and allowed, and the Order was issued without notice because the District Court determined that “there is a substantial likelihood of immediate danger of abuse.” The Order was served on Mclsaac while he was working at school. The Order provided that Mclsaac was not to be near Diane Mclsaac’s residence, and he was ordered to stay 200 yards away from Diane Mclsaac. The Order did not address Mclsaac’s visitation right to see Maiy, so Attorney Chiccarelli and Diane Mclsaac’s attorney composed an agreement that was to be effective from the ex parte order to the hearing scheduled for March 19, 1998.
On March 19, 1998, an extension hearing was held on the Order. Mclsaac asserts that Attorney Chiccarelli was not prepared and incompetent during the hearing. According to Mclsaac, Attorney Chiccarelli did not call any witnesses or impeach any of Diane Mclsaac’s fraudulent testimony. Mclsaac asserts that evidence of Attorney Chiccarelli’s incompetence is demonstrated in trial transcripts where Mclsaac attempted to have the case marked up for trial and the judge responded with, “Oh this is it... That’s been heard. This is the final hearing . . .” After the hearing, the Order was extended for one year, until March 12, 1999.
*740 On August 18, 1998, after Attorney Chiccarelli had been discharged, Mclsaac submitted a pro se motion requesting that the District Court vacate the Order and transfer the case to the Probate Court. The District Court did transfer the case to Probate Court, but refused to vacate the Order. On September 15, 1998, the Probate Court extended the Order and modified the visitation and custody order by granting Diane Mclsaac sole physical custody and providing Mclsaac with visitation rights. The Order was reviewed by the Probate Court on numerous occasions and was extended each time. The Probate Court eventually entered a permanent Order against Mclsaac.
At the end of the school year, Mclsaac was not asked to return for the following year. When Mclsaac inquired as to the reason, the principal stated that it was because of all the “personal stuff’ including the Order being served at work, telephone calls from Attorney Chiccarelli, and telephone calls from Diane Mclsaac.
Mclsaac asserts that Attorney Chiccarelli misrepresented herself as a competent attorney, that her incompetence at the District Court hearing is the reason the Order was granted, and that her inadequate arguments at the Probate Court hearing is the reason why he must pay child support and why he lost custody of Mary.
DISCUSSION
This Court grants summary judgment where there are no genuine issues as to any material facts and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of triable issues, and that summary judgment record entitles it to judgment in its favor as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991).[3]
To prevail on a claim of legal malpractice, Mclsaac must establish that the: “(1) attorney failed to exercise reasonable care and skill in handling the matter for which the attorney was retained; (2) client has incurred a loss; and (3) attorney’s negligence is the proximate cause of the loss.” Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C., 25 Mass.App.Ct. 107, 111 (1987), and cases cited. In essence, Mclsaac must prove that he would have obtained a different and better result had Attorney Chiccarelli exercised reasonable care in both the Probate Court and District Court hearings. See Poly v. Moylan, 423 Mass. 141, 145 (1996), and cases cited. When Mclsaac attempts to prove that he would have obtained a better result, he can only provide evidence which would reflect the time period that Attorney Chiccarelli represented him because she is not responsible for any events that occurred after she was discharged by Mclsaac. See Poly, 423 Mass. at 148 (concluding that the plaintiffs claim failed because there “was no evidence of damage occurring to the plaintiff as a result of [the attorney’s] conduct in that action up to the time of his withdrawal”). Therefore, the evidence submitted in this case is limited to the time period between February 12, 1998 and April 2, 1998.
In the matter before the Probate Court, Mclsaac asserts that because of Attorney Chiccarelli’s negligence, he lost child custody and suffered a financial loss due to overpayment of child support. Both of these arguments fail because Attorney Chiccarelli acted with reasonable care during her limited representation and there is no causal connection between her actions and the final Judgment by the Probate Court. In regards to the child custody issue, Attorney Chiccarelli attended one Probate Court hearing. At this hearing, she requested that a guardian ad litem be appointed to determine the best interest of the child. The motion was allowed and a guardian ad litem was appointed. By making this request, Attorney Chiccarelli exercised reasonable care and skill in handling the custody matter. Mclsaac fails to produce any evidence to suggest a causal connection between the request for a guardian ad litem and the guardian ad litem’s adverse recommendation which occurred in May 1998, a month after Attorney Chiccarelli had been discharged. Furthermore, during the divorce hearing held in September 1998, the Probate Court agreed with the recommendations and granted sole custody to Diane Mclsaac. Attorney Chiccarelli was not involved with either one of these events. Therefore, there was no negligent act regarding the child custody issue.
In regards to the issue of child support, Mclsaac argues that Attorney Chiccarelli was negligent in not attempting to modify his child support order and that as a result he paid excessive child support. Attorney Chiccarelli represented Mclsaac for only one Probate Court hearing. During that hearing, the judge ordered, based on the parties’ financial statements, that Mcl-saac pay child support in the weekly amount of $222.37. During the divorce hearing, after Attorney Chiccarelli had been discharged, the Probate Court ordered that Mclsaac pay a weekly amount of $200. This amount was decreased to take in consideration his coverage of his family’s medical and dental insurance as well as his traveling costs to see his daughter. Contrary to Mclsaac’s assertion, the Probate Court did not reduce the child support because it was too high but so that Mclsaac would be able to adhere to the Judgment without defaulting. The reduction in child support does not reflect any overpayment of child *741 support; therefore, Mclsaac did not incur any damages due to Attorney Chiccarelli’s representation during the Probate Court hearing. Mclsaac also asserts that Attorney Chiccarelli was negligent in her representation of him during the Abuse and Prevention Hearing before the District Court. Mclsaac claims that Attorney Chiccarelli was unprepared for the hearing and did not cross-examine witnesses or attempt to impeach Diane Mclsaac’s testimony. As a result, Mclsaac contends that he lost not only his job but also custody of his daughter.
During a continuation hearing for an Abuse and Prevention Order, the “burden is on the complainant to establish facts justifying the issuance and continuance of an abuse and prevention order.” Frizado v. Frizado, 420 Mass. 592, 596 (1995). The defendant does not need to produce any evidence or testily at the hearing. See id. The only requirement is that the defendant appear at the hearing. See id. In this matter, Attorney Chiccarelli did not produce any evidence and she was unsuccessful in attempting to reschedule the hearing for another day. Mclsaac accuses Attorney Chiccarelli for negligence based on these facts and claims that those circumstances were the reasons the Order was extended. However, even if Attorney Chiccarelli had made a mistake or employed poor judgment regarding the lack of evidence or the rescheduling of a hearing, that is not enough for Mclsaac to prevail on a legal malpractice claim. See Colucci, 25 Mass.App.Ct. at 111, citing Stevens v. Walker & Dexter, 55 Ill. 151, 153 (1870) (stating that attorneys are not liable for every mistake and that attorneys may make mistakes due to “imperfection of human judgment”).
To prevail, Mclsaac would have to establish that if these mistakes had not occurred, he would be in a better position. See Poly, 423 Mass. at 145. McIsaac fails to prove this causal relation. First, Mclsaac cannot accuse Attorney Chiccarelli for negligence based upon receiving the restraining order while at work. This Order was issued on an ex parte basis, and at that time, Attorney Chiccarelli could not have prevented the Order from being issued or served. Therefore, Mclsaac’s job loss was not the fault of Attorney Chiccarelli.[4]
Second, Attorney Chiccarelli cannot be held responsible for the numerous extensions or the ultimate permanent order that the Probate Court granted after she was discharged. Mclsaac argues that if Attorney Chiccarelli had produced evidence during the hearing and impeached Diane Mclsaac’s testimony, then the Order would not have been granted, and the subsequent extension orders would never have existed. However, this argument fails because during the hearing the judge looked at the circumstances to determine if “serious physical harm [was] imminent . . .” Jones v. Gallagher, 54 Mass.App.Ct. 883, 888 (2002). The judge then determined that an Order should be issued. Furthermore , the j udges in the subsequent hearings were only to consider the present circumstances to determine whether there was still the existence of imminent harm. See id. at 890 (holding that the judge is not to make this decision based upon the existence of an earlier order, or evidence at a previous hearing, but to make a determination on the basis of the current situation). Even after applying this stringent standard, it is clear that in every extension order the judges determined that there was still imminent harm, as noted by Judge McGovern’s findings that the relationship between Mclsaac and his ex-wife, “is stressful and is volatile, and that [Mclsaac] is verbally abusive, and obsessive in his quests.”
For these reasons, Mclsaac cannot prove that he would have been in a better position if Attorney Chiccarelli had put forth evidence at the hearing. Therefore, even assuming that Attorney Chiccarelli was negligent in her representation during the first hearing, this negligence did not cause the result in the subsequent extension hearings.
ORDER
For the foregoing reasons, Attorney Chiccarelli’s motion for summary judgment on all counts is ALLOWED.

McIsaac asserts both a legal malpractice claim and a misrepresentation claim. Mclsaac does not provide any additional evidence in support of his misrepresentation claim. Therefore, this Court will address the legal malpractice and misrepresentation counts as one issue.

Procedurally, an appeal must be filed thirty days from the day the case was entered on the docket. In this case, the divorce decree was entered in October 1998; the request for an appeal was more than thirty days later. At the time, however, the Probate Court agreed to enter findings to the effect that it was unaware that Mclsaac had not properly reserved his rights to demand findings.

Along with his opposition, Mclsaac filed an affidavit pursuant to Mass.R.Civ.P. 56(f), arguing that the motion for summary judgment is premature because according to the tracking order, two more months remain for discovery. It is in the judge’s discretion as to whether a continuance should be granted. Mass.R.Civ.P. 56(f). After reviewing Mclsaac’s affidavit, this Court concludes that he has not brought forth any additional facts that could not have been discovered during the two years that this mater has been active, and furthermore, would not be determined by two more months of discovery. See E.A. Miller, Inc. v. South Shore Bank, 405 Mass. 95, 99-100 (1989). Accordingly, Mclsaac’s request for a continuance is denied.

It should be noted that although Attorney Chiccarelli could not prevent the Order from being served at Mclsaac’s work, she did assist him in arranging a visitation agreement during the time between the hearings. This assistance reflects that Attorney Chiccarelli was responsible and exercised due care on behalf of Mclsaac.