Kern, Leila R., J.
The plaintiff, Michael Meloche, brought this action on behalf of Robert Jamara to recover damages arising out of Jamara’s sale of three properties located in North Brookfield, Massachusetts. After a ten-day trial, the jury found defendant Barbara March liable for breach of contract, breach of a promissory note, conversion, and fraud in connection with her purchase of two of the three properties in question. The jury also found defendant Attorney Howard Stempler liable for legal malpractice and fraud. This court reserved the plaintiffs G.L.c. 93A claim against Stempler for itself, and now makes its findings of fact and rulings of law on this claim.
Findings of Fact
Based on the weight of the credible evidence and reasonable inferences drawn therefrom, this court finds the following facts.
Robert Jamara has long suffered from a severe, chronic case of bipolar disorder. As a result of this disorder, Jamara has engaged in erratic behavior and is prone to make foolish business decisions. Over the years, Jamara has suffered bouts of depression, sometimes even becoming suicidal, and has shown early signs of hypomania and paranoia. Although both Jamara and Barbara March had knowledge of Jamara’s condition at the time of the real estate transactions in question, neither parly informed Attorney Stempler.
Jamara first met March in 1984, and their relationship progressed to a point where Jamara entrusted March with many of his affairs. In September 1996, March and her family moved into a farm house on Hillsville Road that was owned by Jamara. Jamara permitted March to live in the house free of charge in return for March’s care of the property. In November 1996, Jamara’s mother moved into the house with March and her family. March provided care for Jamara’s mother, for which Jamara paid March $250 each week. This arrangement continued until March 2000, at which time Massachusetts authorities determined that the property was unfit for the mother’s care and moved her into a nursing home.
From 1996 to 2000, March and Jamara also engaged in several business ventures together. One of those ventures involved the purchase and rental of apartment buildings. Jamara was the financier of this venture, while March located buildings for Jamara to buy.
In June 1999, March broached the idea of purchasing the Hillsville Road farm house from Jamara. The two settled on a sale price of $300,000, and signed a handwritten statement reflecting their agreement on July 13, 1999. The agreement implied that the transaction would be seller-financed, with Jamara taking back a $300,000 interest-free mortgage on the property, to be paid off in $1,000 monthly installments.[3]
*631 March contacted Stempler to prepare all of the requisite documents relating to the sale. March apprised Stempler of her deep involvement in both Jamara’s life and his real estate ventures. Stempler believed there was almost a “familial” relationship between March and Jamara. Stempler advised March that he could not represent both parties to the transaction, but he would be happy to represent March.
March brought Jamara to Stempler’s office to discuss the sale of the Hillsville Road farm house. Jamara understood that Stempler was March’s attorney, but believed that Stempler was assisting both March and himself with respect to the transaction. Following this meeting, Stempler drafted a purchase and sale agreement and began working to clear the title to the property. The agreement recited that $5,000 was to be paid on the date of execution with the remaining balance of $295,000 to be paid in the form of a promissory note and mortgage at the time of the closing. The debt owed on the note was then to be paid in monthly installments of $1,000 for two-hundred-ninety-five months. Jamara and March both signed the agreement on July 26, 1999, and mailed it back to Stempler’s office.
The “closing” for the sale of the Hillsville Road property took place at Stempler’s office on August 13, 1999. Jamara reviewed the various documents. Stempler believed that Jamara understood the terms of the documents, although Jamara never expressly stated that he did. At no point, either before or during the closing, did Stempler advise Jamara to retain his own lawyer or explain to him the terms of the sale, the note, and the mortgage.
The note and the mortgage stated a principal amount of $295,000 with a 4% interest rate[4] and an astounding sixty-eight — -year repayment term. Apparently, the interest rate was added to the terms of the mortgage because Stempler “knew the IRS would impute interest” if it did not. In contrast to the note and mortgage,- a separate “Agreement” between Jamara and March suggested that March would be liable only for the payment of principal in monthly installments of $1,000 (i.e., in accordance with the original handwritten agreement).[5] The Agreement further provided that both parties were “advised of the terms and nature” of the transaction and had “the opportunity to seek counsel of their own choosing.”
The deed, note, mortgage, and Agreement were duly executed at the time of closing. Stempler did not record the deed and note until December 28, 1999, however, because he had not yet obtained the Town of North Brookfield’s waiver of its right of first refusal pursuant to G.L.c. 61, §8. Instead, Stempler placed the closing documents in a safe in his office. At no point did Stempler deliver the note to Jamara.
After the closing, March contacted Stempler and requested his assistance in consummating the sale of two additional properties owned by Jamara. March informed Stempler of a contract for the sale of “Lot D” on Ryan Road to Dennis Coll,[6] as well as the sale of “Lots F and H” on Ryan Road to herself. Stempler was aware that March was acting in a representative capacity with respect to the sale of Jamara’s property to Coll. Stempler prepared purchase and sale agreements for both transactions and delivered them simultaneously to March on October 14, 1999. Up to this point, Stempler had not yet met or spoken with Coll regarding his purchase of real estate from Jamara.
The purchase and sale agreement between Jamara and March for the Ryan Road property provided a sale price of $37,500, of which $37,250 was to be paid in the form of a mortgage and promissory note with a 6.25% interest rate and ten-year term. The purchase and sale agreement between Jamara and Coll called for a $100,000 purchase price, $12,000 to be paid as a deposit, $38,000 to be paid at closing in the form of “cash, cashier’s bank or treasurer check,” and the remaining $50,000 to be paid at closing in the form of a mortgage and note with a 4% interest rate and five-year term.
The parties signed their respective purchase and sale agreements and returned them to Stempler. Coll also provided Stempler with the requisite deposit, which Stempler held as escrow agent. Stempler began working to clear the title to the properties and prepared the closing documents.
On January 10, 2000, Stempler sent an invoice to March for real estate transfer taxes (i.e., deed stamps) and recording, title, and attorneys fees with respect to the sale of the Hillsville Road property. March told Jamara that Stempler had done work and that he needed to be paid. On January 17, 2000, Jamara signed an agreement under which he authorized March to pay attorneys fees, closing costs, and various real estate taxes out of his proceeds from the sale of the Ryan Road properties, and authorized the reimbursement to March of $1,368 for the deed stamps that March had previously paid with respect to the Hillsville Road property. This agreement was then sent to Stempler.
On February 24, 2000, Jamara signed the deeds conveying the Ryan Road properties to March and Coll. Jamara gave the two deeds to March to bring to the closing. Jamara did not attend the closing. It took place on March 9, 2000, with March representing Jamara as his agent. Coll paid the $38,000 due at closing in the form of a personal check issued to Stempler, and executed a promissory note for the remaining balance of $50,000. Rather than deliver Coil’s signed promissory note to Jamara, Stempler placed the note in a safe in his office. Stempler failed to have either Coll or March sign a mortgage to provide Jamara security for money owed on the two sales.
Stempler deposited Coil’s check in escrow and used the funds to pay real estate taxes, recording fees and other closing costs incurred with respect to both Ryan *632 Road properties. Stempler also reimbursed March for closing costs previously paid by her on the Hillsville Road sale, and withdrew his attorneys fees due for services provided with respect to the two real estate sales to March. Stempler issued a check to Jamara for the remaining escrow balance of $28,161.69, which he entrusted to March. Shortly after the closing, Stempler billed Coll for attorneys fees due with respect to the sale of Lot D on Ryan Road.
After a ten-day trial, the juiy, by a special jury verdict, found an attorney-client relationship existed between Stempler and Jamara and Stempler breached the duty of care he owed Jamara with respect to each of the real estate transactions in question. The jury found, however, that Jamara did not suffer harm as a result of the sale of Lot D on Ryan Road to Coll, and Stempler’s breach was not the proximate cause of Jamara’s damages with respect to the sale of the Hillsville Road property to March. With respect to the sale of Lots F and H on Ryan Road to March, the jury found Stempler liable for both fraud and legal malpractice and set damages at $190,000 on both counts.
Rulings of Law
In ruling on the plaintiffs G.L.c. 93A claim, this court is not bound by the findings of the jury on the fraud and legal malpractice claims. See, e.g., Poly v. Moylan, 423 Mass. 141, 151 (1996) (misrepresentation and deceit); Guity v. Commerce Ins. Co., 36 Mass.App.Ct. 339, 340 (1994) (breach of insurance policy); Wyler v. Bonnell Motors, Inc., 35 Mass.App.Ct. 563, 567 (1993) (measure of damages); W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass.App.Ct. 744, 753-54 (1993) (breach of contract). This court is “entitled to take a different view of the evidence than that expressed in the jury’s verdict,” Frostar Corp. v. Malloy, 63 Mass.App.Ct. 96, 109 (2005), and may therefore make findings that are “contrary to those found by the jury,” Guity, 36 Mass.App.Ct. at 340. See also Poly, 423 Mass. at 151, quoting Wyler, 35 Mass.App.Ct. at 567 (“[A] judge may make independent and, therefore, different, findings on the c. 93A aspect of a case that arises from the same facts which gave rise to parallel common law claims”).
General Laws c. 93A, §2, makes unlawful all “unfair or deceptive acts or practices in the conduct of any trade or commerce.” The court views the totality of the circumstances in adjudicating whether the challenged conduct was unfair. Duclersaint v. Federal Nat’l Mtge. Assoc., 427 Mass. 809, 814 (1998). The “nature” of the conduct and the “purpose and effect of that conduct [are] the crucial factors in making a G.L.c. 93A fairness determination.” Massachusetts Employers Ins. Exch. v. Propac-Mass. Inc., 420 Mass. 39, 42-43 (1995).
This court finds that Stempler’s conduct fell well below the standard of care of an ordinary, prudent lawyer, but was not “unfair or deceptive” for purposes of G.L.c. 93A. Among the various acts and omissions committed by Stempler in the course of his duties as closing attorney were his failure to (1) advise Jamara to retain independent counsel and explain that he was not representing Jamara’s interests, (2) explain to Jamara the terms of the various closing documents, (3) deliver the promissory notes to Jamara, and (4) have March and Coll sign mortgages for the two Ryan Road properties and record the mortgages at the Registry of Deeds. At a minimum, Stempler was required to “give clear and explicit notice” to Jamara that he was representing only the buyer in the real estate transactions and that Jamara should not rely on his services. Harris v. Magri, 39 Mass.App.Ct. 349, 351 n.4 (1995). Notwithstanding these failures, this court finds that Stempler acted in good faith in the performance of his duties and did not intend to harm Jamara. Significant to this conclusion are Stempler’s knowledge that March was the primary caretaker of Jamara’s mother, as well as his belief that Jamara and March had almost a familial relationship. In light of this understanding, the favorable terms under which March was able to purchase the real estate from Jamara do not appear so outrageous as to question the propriety of Stempler’s assistance in effectuating these transactions.
Although clearly negligent, Stempler’s conduct was neither dishonest nor deceitful. Cf. Schwartz v. Rose, 418 Mass. 41, 46 (1994) (deliberate failure to disclose material information found to violate c. 93A). A violation of G.L.c. 93A requires “more than a finding of negligence.” Meyer v. Wagner, 429 Mass. 410, 423 (1999) (attorney’s negligence, including failure to record mortgage, found insufficient); American Tel & Tel. Co. v. IMR Capital Corp., 888 F.Sup. 221, 256 (D.Mass. 1995) (“Ordinary negligence alone, which does not reek of callousness or meretriciousness, is not the sort of truly inequitable marketplace behavior which Chapter 93A was intended to punish” [internal quotation marks and citation omitted]). Cf. Davaris v. Petros, 442 Mass. 274, 278 (2004) (citing Poly, 423 Mass. at 151, for proposition that negligent representation by attorney, without more, does not violate G.L.c. 93A, and concluding same with respect to medical malpractice); McCann v. Davis, Malm & D'Agostine, 423 Mass. 558, 560-61 (1996) (law firm’s representation of both buyer and seller in corporate stock sale found to be evidence of negligence, but lack of causation precluded recovery under G.L.c. 93A).
ORDER
For the foregoing reasons, it is hereby ORDERED that judgment enter for the defendant, Howard Stempler, on the plaintiffs G.L.c. 93A claim.

The agreement provided, in relevant part, “In Refrence [sic] to 24 Hillsville and 25 Hillsville .. . pnce agreed between parties $300,000 . . . with seller Robert Jamara Holding [sic] mortgage at 1000.00 monthly for 300 consecutive payments.”

The note required payments of $1,053 per month for eight-hundred-sixteen months, but did not specifically state the rate of interest.

The Agreement provided, in relevant part, as follows: “(T]he parties have agreed that Barbara March will pay a total sum of $300,000.00 to Robert F. Jamara for [the Hillsville Road property] in monthly payments of $ 1,000.00 per month ... Notwithstanding anything contrary contained in the Closing Documents, the parties agree that upon the payment by Barbara March to Robert F. Jamara of $295,000.00 in increments of no less than $1,000.00 per month, that Robert F. Jamara shall sign a mortgage discharge for the instrument

On July 7, 1999, March, purporting to act as Jamara’s agent, contracted with Coll for the sale of Lot D on Ryan Road. Coll and March agreed to a sale price of $100,000.