STEPHEN R. SHIMER *vs.* FOLEY, HOAG & ELIOT LLP & others.[1]

No. 00-P-1088.

Suffolk. June 24, 2002. - September 16, 2003.

Present: GREENBERG, RAPOZA, & MASON, JJ.

*Attorney At Law,* Malpractice. *Negligence,* Attorney at law, Proximate cause. *Damages,* Loss of profits, Attorney's fees. *Evidence,* Legal malpractice, Settlement offer.

In a legal malpractice action brought by a plaintiff who claimed that, but for the negligent advice of his attorneys, he would have settled his underlying dispute with a company for which he served as a sales agent and avoided costly litigation concerning his employment contract, the judge erred in granting the attorneys' motion in limine to preclude certain evidence of damages and their collectibility, and in dismissing the action without reaching the issue of negligence [305-306], where evidence of the company's offer of a new contract to the plaintiff and its terms were operative words admissible to show the financial benefits that the plaintiff might have obtained but for the attorneys' negligence [306-311], and where there was enough evidence of collectibility to go to the jury on the issue of the company's ability to fund at least some portion of the monetary benefits promised in its offer, had the plaintiff accepted it, over the subsequent course of their business relationship [311-314]; further, the judge erred in concluding that the plaintiff could not recover as damages his legal fees and costs incurred in underlying Federal litigation because he could not prove the existence and terms of a new contract offer from the company [314-315].

CIVIL ACTION commenced in the Superior Court Department on February 16, 1996.

Motions in limine to preclude certain damages evidence and to dismiss were heard by *Linda E. Giles,* J.

*Eric Ian Zucker* for the plaintiff.

*Robert J. Muldoon, Jr.* (*Kenneth D. Small* with him) for the defendants.

---

[1]The remaining named defendants were partners at Foley, Hoag & Eliot LLP at the time suit was brought.

RAPOZA, J. This is a legal malpractice case brought by a client, Stephen Shimer, who claims that, but for the negligent advice of his attorneys at Foley, Hoag & Eliot LLP (FHE), he would have settled his underlying dispute with Synthes Ltd. (U.S.A.) (Synthes) and avoided costly litigation. With a jury waiting in the wings, a Superior Court judge granted FHE's written motion in limine to preclude certain evidence of damages. As a consequence of that ruling, Shimer was unable to prove the essential element of damages as to the two pending counts in his legal malpractice complaint, and the judge dismissed both on FHE's oral motion.[2] At issue in this appeal is the propriety of those rulings.[3]

1. *Background.* Shimer, a medical instruments distributor, alleges that he hired FHE to advise him concerning the interpretation of a termination provision in his written contract with Synthes, for which he served as a sales agent in the New England area. Synthes claimed the agreement was due to expire on January 1, 1994, while Shimer asserted that it would automatically renew and continue in effect after that date. According to Shimer, in the course of this dispute, Synthes offered him new, albeit less favorable, contractual terms, which he rejected based on encouraging advice he had received from FHE concerning the viability of his position on the original agreement. In a declaratory judgment action eventually brought by Synthes in

[2]Shimer's complaint originally alleged negligence (count 1), breach of fiduciary duty (count 2), and breach of contract (count 3). Count 2 was dismissed without objection on grounds unrelated to this appeal and, thus, is not before us.

[3]As the judge below considered matters outside the pleadings when deciding FHE's motion to dismiss, we treat the motion as one for summary judgment. See Mass.R.Civ.P. 12, 365 Mass. 754 (1974); *Watros* v. *Greater Lynn Mental Health & Retardation Assn., Inc.,* 421 Mass. 106, 108-109 (1995). See also *Bell* v. *Zoning Bd. of Appeals of Gloucester,* 429 Mass. 551, 555 (1999). Accordingly, "[w]e summarize the facts in the light most favorable to the plaintiff to determine whether the defendants have shown that no genuine issue of material fact exists and that they were entitled to judgment as matter of law." *Girardi* v. *Gabriel,* 38 Mass. App. Ct. 553, 554 (1995). Even if we were to treat the judge's ruling as a directed verdict in favor of the defendant, our analysis would be the same. See *Sereni* v. *Star Sportswear Mfg. Corp.,* 24 Mass. App. Ct. 428, 430-431 & n.4 (1987) (similarity between granting summary judgment and ordering a directed verdict); Smith & Zobel, Rules Practice § 50.2 (1977).

Federal District Court in Pennsylvania to resolve the underlying contract dispute, summary judgment entered in favor of Synthes, a ruling that was upheld on appeal.[4]

Subsequently, at the malpractice trial, Shimer's expert was expected to testify that FHE negligently failed to advise him of the existence of legal precedents adverse to FHE's interpretation of the contract between Shimer and Synthes.[5] FHE had originally evaluated Shimer's legal position and concluded that it was "very likely" that Shimer's agreement with Synthes would be enforced as a self-renewing contract under Pennsylvania law[6] and would be terminable only for certain limited reasons not applicable to Shimer's situation. Nonetheless, FHE told Shimer that further research would be necessary. At a later point, Shimer asked FHE to perform additional research so that he could better evaluate whether to continue defending the Federal litigation initiated by Synthes or to accept that company's offer of a new contract.

FHE conducted further research that revealed two appellate cases involving facts similar to those in Shimer's case, neither of which was helpful to his position. Indeed, one of the cases[7] actually supported Synthes's position that its contract with Shimer was not self-renewing and was, in fact, terminable in the circumstances. Shimer was advised of neither the results of FHE's research nor the existence of precedent supporting the position of Synthes. Instead, Shimer was told that FHE's additional legal research revealed nothing that changed its original analysis that Shimer's legal position was sound.

---

[4]As Synthes is a Pennsylvania corporation, Federal jurisdiction was based on diversity of the parties and the amount in controversy. Although Shimer was represented by local counsel, FHE also appeared in the action on his behalf. Whether or not FHE was negligent in its representation of Shimer in the Federal case with Synthes is not before us.

[5]Although Shimer's complaint alleged a variety of actions on the part of FHE constituting negligence, the trial judge also allowed FHE's motion in limine to limit expert testimony, effectively restricting Shimer's expert proof to the circumstances involving FHE's purported failure to advise him of adverse legal precedents. Although Shimer includes this ruling in his notice of appeal, he does not argue it in his brief and, therefore, we do not address it.

[6]The parties agreed that Pennsylvania law governed the interpretation of the written agreement between Synthes and Shimer.

[7]*Nikas* v. *Hindley*, 99 Ga. App. 194 (1959).

Shimer contends that he was denied the opportunity to reassess the strength of his position in light of the new information, which he claims indicated that the issue was less clear than FHE had led him to believe. See *Williams* v. *Ely*, 423 Mass. 467, 476 (1996) (certainty of counsel's opinion unwarranted when underlying issue not conclusively resolved, thus denying plaintiffs the opportunity to evaluate different courses of action). As a result, he was unable to assess the risks associated with further litigation compared to the benefits connected to Synthes's offer of a new contract. Shimer now asserts that he would have accepted Synthes's latest contract offer had he known that, in circumstances similar to his, an appellate court had taken a position essentially supporting that of Synthes. In any event, had he accepted the offer, the Federal litigation, in which he claims to have incurred $135,000 in legal expenses, would have been rendered moot.

2. *Discussion.* The trial judge's allowance of FHE's motion in limine to preclude certain evidence of damages ultimately proved fatal to Shimer's case. In addition to proving that FHE failed to exercise reasonable care and skill in rendering him legal advice, *Pongonis* v. *Saab*, 396 Mass. 1005 (1985); *Glidden* v. *Terranova*, 12 Mass. App. Ct. 597, 598 (1981), it was Shimer's obligation to prove that FHE's negligence was the proximate cause of his reasonably foreseeable damages or loss. *Fishman* v. *Brooks*, 396 Mass. 643, 646-647 (1986). See *Girardi* v. *Gabriel*, 38 Mass. App. Ct. 553, 558 (1995). Following an exhaustive consideration of Shimer's proof, the trial judge concluded that Shimer was unable to prove either his damages or their collectibility and dismissed the action without reaching the issue of negligence.

Shimer's complaint should not have been dismissed. Rather, his proposed evidence should have been admitted to prove not only the terms of the new contract offered by Synthes, but also the damages stemming from his rejection of the offer as well as their collectibility. Independent of the lost opportunity to accept the new contract offered by Synthes, Shimer also claims that he suffered damages in the form of unnecessary legal fees expended

in litigating the declaratory judgment action.[8] Shimer was prepared to prove the amount of legal fees and costs that he paid relative to the Federal suit, a sum that could have been averted, he states, had he been provided the fruits of FHE's legal research. We conclude that evidence of such expenditures should not have been excluded by the trial judge, with the consequence being that Shimer's complaint was improperly dismissed.

a. *Evidence concerning the offer of a new contract.* For a jury to infer that FHE's alleged negligence caused him harm, Shimer must prove not only that Synthes offered him a new contract, but also the benefits he would have realized had he accepted the proposal. The measure of his damages would thus be the value of the benefits lost when he rejected the offer based on FHE's legal analysis of his case. See; e.g., *Brady* v. *Nestor*, 398 Mass. 184, 189-190 (1986) (in malpractice case in which plaintiff alleged that attorney's negligent handling of employment discrimination suit deprived her of a valuable claim for reinstatement, plaintiff's verdict set aside for failure to prove damages resulting from her rejection of her employer's reinstatement offer). Moreover, Shimer had to demonstrate that benefits offered by Synthes in its contract offer were actually collectible. See *Poly* v. *Moylan*, 423 Mass. 141, 148 (1996), cert. denied, 519 U.S. 1114 (1997) (plaintiff in a legal malpractice action asserting negligence in handling of his claim bears burden of showing that he would have been able to collect something had a judgment been obtained in the underlying case). See also *Jernigan* v. *Giard*, 398 Mass. 721, 723-724 (1986).

i. *Damages.* Shimer's theory of damages was that, had FHE adequately apprised him of the law, he would have accepted Synthes's last offer, thereby reaping the financial benefits of the proposed agreement and forgoing the costs of litigation.[9] See, e.g., *Van Brode Group, Inc.* v. *Bowditch & Dewey*, 36 Mass.

---

[8]FHE asserted before the trial judge the alleged untimeliness of Shimer's claim that his legal expenses in the Federal action were cognizable as damages in the malpractice action. As the judge did not address the issue, it is not before us.

[9]In support of his claim for damages, Shimer indicated to the judge that he would introduce certain business records and correspondence generated by Synthes, but identified no witness from that company through whom those

App. Ct. 509, 518 (1994). Thus, Shimer's ability to prove his damages rested, in large part, on introducing the Synthes offer in evidence to show the monetary value he would have derived from the proposed settlement of his underlying dispute with Synthes. The judge, however, deemed Shimer's proof of the Synthes offer inadmissible hearsay.[10]

Shimer argued that the Synthes offer was admissible on several theories, although he initially pressed the operative words doctrine.[11] The judge rejected that theory for two reasons: first, because this case was not a contract action in which the doctrine is most commonly applied, and, second, because, as she understood Shimer's argument, the Synthes offer was to be used for the truth of the matter asserted.

The question, then, is whether evidence of the Synthes offer was admissible in the malpractice action as it would be in an

exhibits could be introduced. Upon learning that Shimer had conducted no pretrial, out-of-State depositions or any other discovery involving Synthes, the judge gave Shimer several days to contact Synthes in Pennsylvania to arrange for a Synthes witness to testify at trial. When court reconvened four days later, Shimer reported to the judge that Synthes was uncooperative and that any prospective witness from Synthes was beyond the subpoena power of the court.

[10]Before the start of trial, the judge considered the admissibility of certain correspondence referencing the Synthes offer and its terms; FHE objected to those documents as hearsay. Shimer's attorney argued that the terms of the offer, as stated in correspondence between Synthes and Shimer, constituted operative words. The judge denied admission of the documents. These included a November 8, 1993, letter, which sets out Synthes's original offer to resolve the dispute with Shimer; a second letter, dated December 6, 1993, from a Synthes vice president, setting forth various changes to the original offer; and a December 20, 1993, letter from Synthes's attorneys, stating that "Synthes' offers remain on the table" for Shimer's consideration.

Subsequently, the judge considered FHE's motion in limine to preclude Shimer from introducing evidence of damages through Shimer's own testimony about the Synthes offer. Shimer again pressed what amounted to an operative words argument, among other grounds, all of which the judge rejected.

[11]Here, we use the phrase "operative words," as used in Liacos, Brodin & Avery, Massachusetts Evidence § 8.2.5 (7th ed. 1999), to refer to testimony or documentary evidence of the kind variously described as "operative statements," see Telecon, Inc. v. Emerson-Swan, Inc., 17 Mass. App. Ct. 671, 672 (1984), or "verbal acts" or "verbal conduct," see advisory committee note to Fed.R.Evid. 801(c), all describing statements falling within the same doctrine.

action in which the proposed contract itself was at issue.[12] Had Shimer accepted the offer from Synthes, we would not hesitate to characterize evidence of the offer as proof of operative words used in the making of a contract and therefore not subject to the hearsay rule. In that context, the offer, once communicated to Shimer, would have taken on independent legal significance, giving rise to certain rights and duties between Synthes and Shimer. See *Telecon, Inc.* v. *Emerson-Swan, Inc.*, 17 Mass. App. Ct. 671, 672-673 (1984); Young, Pollets & Poreda, Evidence § 801.4(*a*) (2d ed. 1998). See also *Tenney* v. *Foss*, 268 Mass. 69, 72-73 (1929); *Baldwin's Steel Erection Co.* v. *Champy Constr. Co.*, 353 Mass. 711, 715-716 (1968); Liacos, Brodin & Avery, Massachusetts Evidence § 8.2.5 (7th ed. 1999). In a contest between Synthes and Shimer, then, the Synthes offer could appropriately be introduced in evidence through Shimer's own testimony as operative words, not for its truth, but for the fact that Synthes made it and was thus bound by it.[13]

But in much the same fashion, faced with the burden of proof imposed in a legal malpractice proceeding, which amounts to a "trial within a trial," see *Fishman* v. *Brooks*, 396 Mass. at 647,

[12]For example, in 2 McCormick, Evidence § 249, at 101 (5th ed. 1999), the commentator speaks of the admissibility of such statements in the context of suits on a contract. In 6 Wigmore, Evidence § 1770 (Chadbourn rev. ed. 1976), the commentator speaks of the admissibility of utterances when they are a part of the issue under the substantive law of the case, and in particular "[i]n issues of contract" (emphasis omitted). Liacos describes the context of such statements as being "offered as the basis, in whole or in part, of the cause of action." Liacos, Brodin & Avery, *supra* at § 8.2.5.

[13]It is widely held that a contract, along with communications relevant to its formation, "is a form of verbal act to which the law attaches duties and liabilities and therefore is not hearsay." *Mueller* v. *Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992), citing 2 McCormick, Evidence § 249, at 101 (4th ed. 1992). See *Creaghe* v. *Iowa Home Mut. Cas. Co.*, 323 F.2d 981, 984 (10th Cir. 1963); *West Coast Truck Lines, Inc.* v. *Arcata Comm. Recycling Center, Inc.*, 846 F.2d 1239, 1246 n.5 (9th Cir.), cert. denied, 488 U.S. 856 (1988); *Island Directory Co.* v. *Iva's Kinimaka Enterprises, Inc.*, 10 Haw. App. 15, 21-22 (1993); *Moen* v. *Thomas*, 627 N.W.2d 146, 150 (N.D. 2001); *Thomas C. Cook, Inc.* v. *Rowhanian*, 774 S.W.2d 679, 685 (Tex. App. 1989). Similarly the Federal Rules of Evidence "exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." Fed.R.Evid. 801(c), advisory committee's note.

Shimer still had to demonstrate the probability that he would have reached a more favorable outcome, here an agreement with Synthes, had FHE exercised adequate skill and care. See, e.g., *Poly* v. *Moylan*, 423 Mass. at 145; *Van Brode Group, Inc.* v. *Bowditch & Dewey*, 36 Mass. App. Ct. at 518. Though the malpractice suit was not, as the trial judge observed, an action to enforce a contract, Shimer still had the burden of establishing the central issue in the underlying dispute, namely, the existence and terms of the Synthes offer which, but for FHE's negligence, Shimer claims he would have accepted, thereby forming a contract. See *Whiteaker* v. *State*, 382 N.W.2d 112, 116 (Iowa 1986) (to prove he was deprived of a favorable settlement due to his attorney's negligence, former client must prove that a firm settlement offer was made and that he and the party against whom his claim was asserted would have reached an agreement).

We conclude that proof of the underlying offer, as proposed by Synthes and rejected by Shimer allegedly in reliance on FHE's advice, was sufficiently integral to his malpractice claim and, on that basis alone, should not have been excluded. In the context of the malpractice proceeding, the offer, once communicated to Shimer, would have taken on such independent legal significance as to exempt it from application of the hearsay rule.

The judge also ruled against the operative words theory of admissibility because Shimer sought to admit the Synthes offer for its truth, or as the judge stated it, for the fact that the offer was made and its monetary benefits, and because Shimer's attorney conceded that the evidence was being offered for such truth. But we think Shimer's testimony that Synthes made him an offer, and the terms of that offer, was admissible precisely for the fact that the offer was made and for its terms. Given Shimer's burden in the malpractice action to prove that he lost the financial benefits that he would have received had he accepted the Synthes offer, the words of that offer take on independent legal significance on the issue whether their acceptance would have produced an agreement binding on the parties.

Yet in addition to proving the probability of a better outcome in his dealings with Synthes, Shimer also needed to introduce in

evidence the Synthes proposal to quantify his claim for damages caused by his rejection of the offer. See, e.g., *Fishman* v. *Brooks*, 396 Mass. at 647 & n.1 (in the trial within a trial, jury had to determine whether the client would have prevailed in his underlying personal injury claim and whether his damages would have exceeded the amount his attorney recommended he accept in settlement); *Atlas Tack Corp.* v. *Donabed*, 47 Mass. App. Ct. 221, 226 (1999) (trial within a trial necessary to determine, first, whether the underlying defendant was negligent, and then whether the client could have obtained a better result in that case than the amount obtained by his attorney in settlement). We acknowledge the judge's dilemma, that the financial promises made by Synthes seemed, in one sense, to be offered not just for the fact that an offer was made but for the truth of Synthes's assertion that it would have paid Shimer those amounts had he accepted the offer. It is a fine distinction, but a critical one.

We think proof of the Synthes offer, even as evidence of damages, was not dependent on the truthfulness, honesty, or sincerity of the Synthes vice president who made the proposal, on Synthes's behalf, to pay certain amounts to Shimer. Rather, for purposes of this case, once the offer was extended and it was left to Shimer to accept it, the offer and the financial benefits proposed therein took on independent legal significance. The significance of the words used by Synthes in making the offer was in the fact that they were communicated to Shimer and that he would have accepted; their import, at that point, was unrelated to whether Synthes truly meant to pay the amounts it proposed.[14] "In particular, evidence of lost profits based on a contract is not subject to the hearsay rule because such evidence concerns the existence of the contractual terms rather than an assertion of their 'truth.' " *Mueller* v. *Abdnor*, 972 F.2d 931,

---

[14]Though not discussed at length in our cases, the distinction is well-illustrated in *In re Estate of Raketti*, 340 N.W.2d 894, 900 (N.D. 1983), wherein the decedent's statement promising to pay her sister for her nursing services was admissible as an operative fact, to prove the existence of an express agreement regarding payment, regardless whether the out-of-court declarant had been lying or whether she really intended to make good on her promise to pay. "It is the outward manifestations of assent which govern, not the secret intentions of the parties." *Ibid.*

937 (8th Cir. 1992) (proposed contracts were not hearsay when offered to show "the making of a contract and the potential loss of benefit"), citing 6 Wigmore, Evidence § 1770, at 259-260 n.1 (Chadbourn rev. 1976). See *United States Fid. & Guar. Co. v. Davis*, 3 Ariz. App. 259, 261 (1996) (testimony recounting conversation about price terms in potential sales agreement was admissible to prove lost profits caused by defendant's wrongful attachment, and not for the truth of the conversation). See generally *Jamaica Pond Garage, Inc.* v. *Woodside Motor Livery, Inc.*, 236 Mass. 541, 542 (1920) (price stated for rental vehicle, overheard by witness who testified at trial, was not hearsay, but corroborated plaintiff's claim of agreed-upon price).

Consequently, in the narrow circumstances of this trial within a trial framework, we view evidence of the Synthes offer and its terms as operative words admissible to show the financial benefits that Shimer might have obtained but for FHE's negligence. Dismissal of Shimer's complaint, for lack of proof of the settlement offer and its value, was therefore error.

ii. *Collectibility.* The judge also ruled that Shimer had offered insufficient proof that he would have been able to collect from Synthes the funds derived from his acceptance of the offer. A plaintiff in a malpractice action, who asserts that his attorney's negligence prevented him from obtaining a judgment to which he was entitled, bears the burden of proving that he "could have collected something" on the judgment. *Jernigan* v. *Giard*, 398 Mass. at 723. See *Poly* v. *Moylan*, 423 Mass. at 148. Proving collectibility derives from the requirement that the plaintiff demonstrate that the attorney's negligence caused him a loss, "that he probably would have obtained a better result had the attorney exercised adequate skill and care." *Jernigan* v. *Giard*, 398 Mass. at 723, quoting from *Fishman* v. *Brooks*, 396 Mass. at 647. Even with admission of the evidence of the Synthes offer supporting his claim for damages, Shimer must still demonstrate that Synthes had the financial ability to pay the amounts to which it agreed in order to establish that FHE's negligence caused him an actual loss.

Shimer maintains that he did not have to prove collectibility because his loss here arose from his rejection of a contract proposal, rather than from a lost judgment. He urges that a less

stringent standard should be applied where the underlying loss is an offer extended by a willing party seeking a consensual resolution of a dispute rather than a judgment reached through adversary proceedings. Though not specifically addressed in our cases, the available authority suggests otherwise. See *Whiteaker* v. *State*, 382 N.W.2d at 117 (the plaintiff, claiming he could have obtained a favorable settlement but for his attorney's negligence, failed to offer evidence that the underlying defendant had the "financial wherewithal to fund any settlement proposal which its attorney may have thought reasonable"), cited in *Jernigan* v. *Giard*, 398 Mass. at 723. Collectibility is not a measure of a party's willingness to make a payment or to provide a benefit to another. Rather, it is an assessment of a party's ability to do so. Accordingly, it is appropriate to determine the ability of a party to carry out an obligation regardless whether the obligation is entered into voluntarily or ordered by the court. When it comes to the necessity to prove collectibility, we see no reason to distinguish such cases from each other.

Shimer additionally argues that he should have been allowed to offer evidence of collectibility through his own testimony regarding his first-hand knowledge of Synthes's financial status, as well as through his experience as a consultant to a Synthes competitor. As previously noted, we view Shimer's evidence of Synthes's solvency under the summary judgment standard; thus, we construe the evidence most favorably to Shimer, and we afford him the benefit of all reasonable inferences. See *Salem Bldg. Supply Co.* v. *J.B.L. Constr. Co.*, 10 Mass. App. Ct. 360, 365 (1980).

First, Shimer proposed to testify that Synthes continued to pay him for his services under his former contractual arrangement even after he rejected Synthes's final offer made in December, 1993, and that Shimer continued to receive timely payments from Synthes until the relationship ceased, in August, 1994. The judge rejected this evidence as proof that Synthes could have funded the significant sums proposed in the Synthes offer.

To be sure, Shimer's evidence fell far short of demonstrating that Synthes had sufficient income and assets to fund all amounts

proposed in Synthes's last offer, which allegedly included $750,000 to buy out Shimer's existing business. However, Shimer argues that evidence that Synthes continued to pay Shimer for his services some eight months after he rejected its offer would tend to show that it had the ability to fund at least a portion of the offer had he accepted it in January, 1994. As we previously noted, a plaintiff in a legal malpractice suit need only show that he could have collected "something" on the underlying judgment. See *Jernigan* v. *Giard,* 398 Mass. at 723, and cases cited. It is that portion of the judgment that can actually be collected "that determines the financial liability and responsibility of the legal malpractice defendant, assuming professional negligence has been determined." *McDow* v. *Dixon,* 138 Ga. App. 338, 341 (1976). See *Poly* v. *Moylan,* 423 Mass. at 148. Hence, Shimer was not required to prove collectibility of the entire sum he might have obtained from accepting the Synthes offer, but only that he could have collected "something," thereby demonstrating the likelihood of a result better than he obtained by relying on FHE's advice. See *Jernigan* v. *Giard, supra.*

Of course, evidence of Synthes's timely payments to Shimer, alone, would not prove that Synthes had the financial ability to pay Shimer additional amounts beyond what was actually paid. But Shimer also proposed to testify about his subsequent employment as a consultant for a Synthes competitor, and about market studies he conducted in the course of that employment specifically concerning Synthes's revenues and market share as of 1996.

It is in this respect that the nature of the underlying dispute and settlement offer between Synthes and Shimer becomes relevant to the issue of collectibility. While the judge opined that Synthes's financial status, as demonstrated by a market study in 1996, had no bearing on its ability to fund the Synthes offer extended to Shimer in December, 1993, we note from Shimer's proposed evidence that certain terms of the Synthes offer anticipated an ongoing relationship with Shimer. It allegedly included, for example, an annual salary, annual bonuses, and relocation expenses for up to two years. As a consequence, evidence of Synthes revenues and market share in 1996 could

support a reasonable inference that it could have funded at least some portion of the proposed agreement with Shimer beyond the end of their relationship in 1994. How much, we think, would be a question for the jury. See generally *Taylor Oil Co.* v. *Weisensee*, 334 N.W.2d 21, 30 (S.D. 1983).

Admittedly, Shimer's proposed proof of collectibility was thin. See, e.g., *McDow* v. *Dixon*, 138 Ga. App. at 341-342 (judgment against legal malpractice defendant reduced to amount of underlying tortfeasor's insurance coverage where plaintiff failed to introduce business records, financial statements, or assets to prove collectibility over and above insurance). "A toehold, however, is enough to survive a motion for summary judgment." *Marr Equip. Corp.* v. *I.T.O. Corp.*, 14 Mass. App. Ct. 231, 235 (1982). See *Scotti* v. *Arrow Electronics, Inc.*, 37 Mass. App. Ct. 954, 955 (1994). We conclude that there was enough here to go to a jury on the issue of Synthes's ability to fund at least some portion of the monetary benefits promised in its offer, had Shimer accepted it, over the subsequent course of their business relationship. Accordingly, on this record, dismissal for lack of proof of collectibility was unwarranted.

b. *Legal expenses as damages.* The judge erred, as well, when she concluded that Shimer could not recover as damages in the malpractice action his legal fees and costs incurred in the underlying Federal litigation because he could not prove the existence and terms of a new contract offer from Synthes.

Shimer claims that FHE's failure to disclose the adverse findings of its legal research also resulted in his unnecessary defense of the declaratory judgment action. Had he been properly informed by FHE, he posits, he would have conceded the matter and brought the litigation to a close. He would have done so, he asserts, because the significant expense of legal representation would have outweighed the reduced likelihood of success in light of the adverse case law that FHE's research had revealed. Moreover, he would have taken that course of action, he states, regardless of the availability of a new contract offer from Synthes.

In such circumstances, it was appropriate for Shimer to claim as damages in the malpractice action his legal fees and costs associated with the continued defense in the Federal litigation.

Thus, evidence demonstrating Shimer's payment of legal fees and costs would constitute competent proof of damages purportedly resulting from FHE's alleged negligence, independent of any damages stemming from Shimer's rejection of Synthes's offer.[15] Accordingly, his complaint should not have been dismissed on that basis.

3. *Disposition.* We vacate the judgment of dismissal and remand counts 1 and 3 of the complaint for further proceedings consistent with this opinion.

*So ordered.*

---

[15]Shimer need not demonstrate collectibility of his claim for legal fees and costs in connection with the Federal litigation, nor do we understand FHE to contend otherwise. When a client fails to obtain a judgment or loses some future benefit through the negligence of his attorney, the client must prove not only the monetary value of the loss, but the collectibility of the sum involved. Only in that way can the client prove that he was actually harmed by the attorney's negligence. On the other hand, in a case such as the present one, where the injury to the client arises from his payment of unnecessary legal fees and costs, evidence of such an expenditure is sufficient to establish the client's loss.