# Coastal Orthopaedic Institute, P.C. *vs.* Anthony Bongiorno & another.[1]

No. 02-P-448.

Bristol. September 12, 2003. - April 29, 2004.

Present: Mason, Berry, & Doerfer, JJ.

*Attorney at Law,* Malpractice, Negligence. *Negligence,* Attorney at law. *Evidence,* Expert opinion.

In a legal malpractice action, a Superior Court judge properly granted summary judgment to the lawyer defendants, where the plaintiff failed to show that the lawyer defendants did not exercise reasonable care and skill in their factual and legal analysis, which yielded the challenged litigation opinion on the defendability of a certain arbitration [58-60]; likewise, the plaintiff's belatedly raised theory of malpractice based on the lawyer defendants' purported failure to communicate a settlement offer was unavailing, where the plaintiff could not show that it suffered any resulting damages in terms of the amount paid in the arbitration [60-63], and where the plaintiff failed to demonstrate proximately caused losses from incurring legal fees [63-64].

Civil action commenced in the Superior Court Department on June 21, 2000.

The case was heard by *Mitchell J. Sikora, Jr.,* J., on a motion for summary judgment.

*Michael T. Eskey,* of Rhode Island, for the plaintiff.

*Richard W. Renehan* for the defendants.

Berry, J. This is an appeal by Coastal Orthopaedic Institute, P.C. (Coastal), from a grant of summary judgment dismissing the counts in Coastal's complaint alleging legal malpractice against attorney Anthony Bongiorno and his law firm, McDermott, Will & Emery, P.C. (MWE). (In this appeal the

---

[1]McDermott, Will & Emery, P.C.

defendants, from time to time, will be collectively referred to as "the lawyer defendants.")[2]

1. *Procedural and factual background.* The underlying case in which Coastal retained the lawyer defendants, and on which the legal malpractice action was predicated, involved employment termination claims by Bruce Derbyshire, M.D. Derbyshire had been hired to serve — and did so serve for one year — on the medical staff of Coastal. However, after that year, notwithstanding renewal provisions in the contract exercisable by Derbyshire, the principals of Coastal unanimously voted not to extend his contract. Derbyshire's complaint against Coastal was pleaded in three counts and alleged that Coastal's decision to end his employment violated the law prohibiting age discrimination, G. L. c. 151B; was in breach of his contract; and infringed the implied covenant of good faith and fair dealing. After a lengthy arbitration, Coastal prevailed on the latter two counts. However, Derbyshire prevailed on the discrimination count, as the arbitrator ruled that Coastal had terminated Derbyshire for age-related reasons in violation of G. L. c. 151B. The arbitrator awarded Derbyshire $446,491.11 in damages.

2. *The "defendable opinion" theory of malpractice.* Coastal commenced this action against the lawyer defendants and against its accountants.[3] Coastal's legal malpractice complaint was sparsely pleaded[4] — at the edge of notice pleading. From the brief factual sketch and related counts, the complaint (consistent with the theory of proof advanced by Coastal throughout the litigation up to the time the lawyer defendants moved for summary judgment, see further discussion in part 3) rested on a malpractice theory that Bongiorno had rendered incompetent representation by stating an opinion to Coastal that

---

[2]The complaint also contained counts against Coastal's accountants. See note 5, *infra.* Those counts are not before us.

[3]See note 2, *supra.*

[4]Count V alleged negligence against Bongiorno in "advising and counseling [Coastal]." Count VI alleged breach of contract by "fail[ing] to perform adequately under the agreement in that advice and/or counseling given to defend the claim of age-employment discrimination by Bruce Derbyshire was a breach of the defendant's fiduciary duty to [p]laintiff Coastal." In count VII, Coastal alleged that MWE was vicariously liable for Bongiorno's negligence and breach of contract.

Derbyshire's claim was defendable, that Bongiorno's opinion that the case was defendable was patently wrong, that the lawyer defendants should have so known, and, accordingly, that the lawyer defendants committed malpractice in these litigation advices to Coastal.

Consistent with this defendability-opinion-based theory of malpractice, the countervailing, central theme of the lawyer defendants' summary judgment moving papers was directed to establishing that Bongiorno's opinion was within the realm of generally competent advice by an attorney. They argued that Coastal had no reasonable expectation of proving one or more of the essential elements of its claim. See *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711-712 (1991). In support of this position, the lawyer defendants' summary judgment papers relied on the achieved results in the arbitration, wherein Coastal prevailed on two out of three of Derbyshire's claims, and argued, further, that, had the testimony of Coastal's principals been credited, the third claim was also quite defendable. On this latter point, the lawyer defendants emphasized that the award against Coastal on the age discrimination count did not enter on the basis of any unjustified or unsupported legal advices by the lawyer defendants. To the contrary, the award was based on the arbitrator's rejection of the veracity of the testimony of Coastal's principals that they had terminated the contract out of concerns about the quality of Derbyshire's work, a finding that these purported reasons were a pretext, and an ultimate determination that discriminatory animus underlay Coastal's actions in terminating the contract.[5]

In framing the state of the record with respect to the

[5]In the proceedings before the Superior Court, Coastal also argued that the defendability opinion was incompetently rendered because the employment contract with Derbyshire contained a mandatory retirement clause in violation of G. L. c. 149, § 24B. Therefore, it is argued, the lawyer defendants should have known there was a fatal contractual flaw rendering the age discrimination count nondefendable. (The clause had been drafted into the contract by the accountants, whom Coastal also named as defendants in its complaint.) In this appeal, Coastal references, but does not press, this theory of malpractice. In any event, the claim is untenable because the arbitrator's decision adverse to Coastal was not principally based on that clause, but rather, as noted, rested on credibility findings of discriminatory reasons for the employment action.

defendability-based legal malpractice issue, the motion judge summarized the case background as follows.

> "Reduced to its essence, the claim of the Coastal principals is that attorney Bongiorno should have protected them against their own lack of credibility. An attorney cannot, and does not, insure a client against that shortcoming at the risk of malpractice. The arbitrator did not conclude that Coastal had advanced a bad faith, frivolous, or groundless explanation for Derbyshire's nonrenewal. No basis exists in the summary judgment record for the determination that Coastal's position was utterly specious or baseless. The defense was respectably triable as a contest of credibility."

We adopt this well stated synopsis of the case record as it stood at the summary judgment stage, and next turn to our independent review of whether, as matter of law, Coastal failed to present evidence to show it could prove all of the essential elements of legal malpractice and, hence, whether judgment for the lawyer defendants was warranted. "To prevail on a claim of negligence by an attorney, a client must demonstrate that the attorney failed to exercise reasonable care and skill in handling the matter for which the attorney was retained; that the client has incurred a loss; and that the attorney's negligence is the proximate cause of the loss . . . ." *Colucci* v. *Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.*, 25 Mass. App. Ct. 107, 111 (1987) (citations omitted). None of these fundamentals are present in this case. Indeed, Coastal's malpractice claim fails to meet the initial element that the lawyer defendants did not exercise reasonable care and skill in their factual and legal analysis, which yielded the challenged litigation opinion on defendability.

It is a common and generally accepted part of the practice of law for lawyers to render litigation opinions to clients concerning the likelihood of success for a plaintiff or the potential liability for the defense. After all, as a most distinguished member of our courts observed, "[t]he prophecies of what the courts will do in fact, and nothing more pretentious, are what I mean by the law." Holmes, Path of the Law, 10 Harv. L. Rev. 457, 461 (1897). As a predicate to rendering such litigation opinions,

the legal engagement by the attorney involves the undertaking of a comprehensive review of the case facts and an analysis of applicable law, in which endeavors the attorney must "act[ ] with a proper degree of attention, with reasonable care, and to the best of his skill and knowledge." *Colucci*, 25 Mass. App. Ct. at 111. An attorney's legal opinion as to the prospects of litigation success or the risks of liability must adhere to these standards, but in the final analysis, any such opinion concerning the merits of the affirmative case, or the defendability of the defense case, is not to be measured by perfection in predictability of outcome, nor by infallibility in opinion determination. "[A]n attorney will not be held to be a guarantor of a favorable result. An attorney who exercises the requisite skill and care will be protected from liability for pursuing reasonable strategies that ultimately fail. . . . 'The law demands that attorneys handle their cases with knowledge, skill, and diligence, but it does not demand that they be perfect or infallible, and it does not demand that they always secure optimum outcomes for their clients.' " *Meyer* v. *Wagner*, 429 Mass. 410, 419 (1999), quoting from *Grayson* v. *Wofsey, Rosen, Kweskin, & Kuriansky*, 231 Conn. 168, 177 (1994).[6]

In this case, Coastal's malpractice claim falters on this fundamental element of proof, in that Coastal has not produced evidence to show that the lawyer defendants failed to exercise reasonable care and skill in opining that the arbitration was defendable. At the outset, the actual result, wherein Coastal prevailed on two out of three claims posed by Derbyshire, cuts off two corners of the triangle. As to the third corner, the award

[6]These principles on the civil side of the law that govern litigation tactical choices and opinions regarding both the strength of the affirmative case and the defendability of the claims also resonate on the criminal side of the law. "[W]hat our own decisions have sought to afford, is a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Thus, to establish ineffective and incompetent representation on the criminal side, "there ought to be some showing that better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977).

of damages on account of age discrimination did not result from the lawyer defendants having misread the applicable law or failed to analyze the background facts, but rather the award was based on the arbitrator's discrediting of Coastal's explication of the reasons for the employment action. Beyond the advantageous results in Coastal's favor on two counts — which favorable outcomes buttress our conclusion regarding the reasonableness of the rationale of the lawyer defendants' litigation opinion — the threshold element of legal malpractice was also not established because Coastal offered nothing but conclusory assertions to support its claim of incompetent representation in respect to the defendant lawyers' opinion. In support of their motion for summary judgment, the defendant lawyers presented the affidavit of an attorney (formerly a trial judge), who opined that the underlying action against Coastal was plainly defendable in general and that, specifically as to the age discrimination count, based on the expert's review of the record, there was sufficient evidence upon which a trier of fact could have found for Coastal on that claim. In contrast, Coastal did not tender an expert affidavit analyzing the defendability of the claims, either generally, or specifically with respect to the age discrimination count.

"Expert testimony is generally necessary to establish that the attorney failed to meet the standard of care owed by an attorney in a particular case, *Pongonis* v. *Saab*, 396 Mass. 1005, 1005 (1985), and cases cited, unless the alleged malpractice 'is so gross or obvious that laymen can rely on their common knowledge to recognize or infer negligence . . . .' " *Colucci*, 25 Mass. App. Ct. at 111, quoting from *Pongonis* v. *Saab*, *supra*. For these reasons, we conclude that summary judgment properly entered for the lawyer defendants on the defendability opinion theory of malpractice.

3. *The changed course and Coastal's newly advanced theory of malpractice.* In this appeal, Coastal strongly presses a different theory of malpractice, which is that the lawyer defendants failed to communicate a settlement offer. This settlement-based claim of legal malpractice is not discernible in the allegations of the complaint (see note 4, *supra*), nor was the claim disclosed in any other pleadings filed by Coastal before the summary

judgment proceeding. This alternative theory was added to the case by Coastal only *after* the lawyer defendants had moved for summary judgment on what, to that point, had been the exclusively advanced defendable-opinion theory of malpractice.

Reference to a noncommunicated settlement offer appears for the first time in the affidavit of Kevin Mabie, M.D., a principal of Coastal and its former president, which affidavit was filed in Coastal's opposition papers. In his affidavit, Mabie avers that he learned, subsequent to the arbitrator's decision, that Derbyshire's attorney had made an offer of settlement to attorney Bongiorno, which the latter failed, it is averred, to communicate to Coastal. No other details about the settlement offer are set forth in the Mabie affidavit. Significantly absent is the date and the point during the course of the arbitration proceedings when this settlement offer was purportedly communicated to Bongiorno.[7] (This omitted information as to date is material to the issue whether Coastal could prove the legal malpractice element of damages with respect to the incurring of legal fees, an issue which we address in part 4, *infra*.)

In reviewing the summary judgment record in the Superior Court, the motion judge expressed reservations concerning whether this new, noncommunicated settlement malpractice theory was properly before that court.[8] The reservation is well taken. There was an unfair and ambushing quality to Coastal's

---

[7]Coastal also surfaced an alternative formulation of the lawyer defendants' litigation opinion in the Mabie affidavit. The affidavit states that attorney Bongiorno negligently counseled "*not to settle* because . . . [Coastal] *would prevail*," and that Coastal thereby "lost an opportunity to settle" (emphases supplied). Coastal highlights the "would-prevail" formulation in this appeal and argues that this opinion constituted legal malpractice even more egregious than the defendability opinion. In our view, the "would prevail"-malpractice-opinion theory is a variation of, and is subsumed within, the defendability theory — which, for the reasons set forth above, is unavailing. However, were we to assume — without reaching or accepting the premise — that there is an actual difference in the highly formulaic distinction between a lawyer's opinion to a client that a case is defendable, versus a statement that the defense will prevail, our determination that there was no legal malpractice, as matter of law, equally applies to both opinion formulations in this case. The plaintiff's omission of an expert affidavit that would support the malpractice claims would be a failure under either formulation.

[8]Coastal says that it requested more time to conduct additional discovery. However, if such an informal request was made — a point unclear in the record — it matters not, because Coastal did not file an affidavit as required by

litigation posturing.[9] At the time the lawyer defendants filed for summary judgment, Coastal's defendability theory occupied the field. To address this fielded theory, the lawyer defendants obtained the expert opinion directed to the defendability opinion, only to learn after the filing of that expert submission that Coastal had shifted its offensive line. There was no explanation concerning why Coastal held back on this noncommunicated settlement claim, nor were there any representations of a late discovery. Rather, this entirely new claim of legal malpractice emerged from out of the blue, after the issue had been joined on the defendability theory. Advocacy in presenting, or defending, the main issue or issues in a case on a motion for summary judgment should not require broken field running — where one or the other side draws new and moving lines concerning the nature of the case and the legal issues presented.

Given Coastal's late effort to tack on a new theory of malpractice, and because the affidavit was not based on personal knowledge, the lawyer defendants moved to strike Mabie's affidavit. However, to preserve their rights and to rebut what had now been newly added to the record by Coastal, the lawyer defendants also filed an affidavit by Derbyshire's attorney, who, while confirming that a $450,000 offer of settlement had in fact been communicated to a colleague of Bongiorno's, stated that the settlement offer had been communicated near the end of arbitration, that is, only just prior to the issuance of the arbitrator's decision — and that the offer had been rejected by Coastal. At this point, the vast majority of legal work had been done and attendant legal fees incurred by Coastal. Notwithstanding his reservations about excluding the Mabie affidavit, in light of the lawyer defendants' counter filing, the motion judge

---

Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974), requesting a continuance. Furthermore, the motion judge noted that discovery was substantially completed.

[9]Coastal's appellate brief describes these new assertions concerning the nature of the alleged legal malpractice set forth in the Mabie affidavit as having "clarified implicitly that its malpractice claims were not premised entirely" on the defendability theory. How one clarifies *implicitly* all the proceedings prior to the lawyer defendants' motion for summary judgment is not further explained.

decided that in order to address the whole case, he would reach and determine the settlement theory of malpractice.[10]

The motion judge rejected the noncommunicated settlement theory of liability on the basis that Coastal could not show that it suffered any damages, since the settlement offer of $450,000 exceeded the arbitration award by $3,508.89.[11] This is a legally correct determination. Coastal was required to, and failed to, "demonstrate the probability that [Coastal] would have reached a more favorable outcome . . . had [the lawyer defendants] exercised adequate skill and care." *Shimer* v. *Foley, Hoag & Eliot, LLP*, 59 Mass. App. Ct. 302, 309 (2003).

4. *Claimed losses from incurring legal fees.* Coastal further argues on appeal that, even if it may have paid less money as a result of the award than the settlement offer, it still incurred legal fees in defending the arbitration, which legal fees, Coastal asserts, were substantial. The payment of unnecessary legal fees and costs may "constitute competent proof of damages purportedly resulting from [the lawyer's] alleged negligence," *Shimer* v. *Foley, Hoag & Eliot, LLP*, 59 Mass. App. Ct. at 315, but such legal fees must be proximately caused by the alleged act of malpractice. "When asserting a claim for legal malpractice, a plaintiff bears the burden of proving that its attorney committed a breach of the duty to use reasonable care, that the plaintiff

---

[10]The affidavit of Derbyshire's attorney, Brian R. Corey, states that "[a]t no time prior to the final award did I make any offer to Mr. Bongiorno. Prior to the award I made an offer to [his partner] to settle the case in the amount of $450,000, an offer that was rejected." Although Coastal's Mabie affidavit omitted a date for the purported noncommunicated settlement offer, see discussion, *supra*, Coastal's appellate brief acknowledges that "the offer was made after the arbitration (but before the arbitrator's decision)" — a point where the legal fees in arbitration would already have been expended. (There are two versions of who received the settlement offer: the Mabie affidavit says it was Bongiorno, the Corey affidavit says it was a partner of Bongiorno. The point is not material to the issues we determine.)

[11]The obligation of a lawyer to convey a settlement offer to a client is clear. "[A] lawyer who receives from opposing counsel an offer of settlement in a civil controversy . . . should promptly inform the client of its substance . . . ." Mass.R.Prof.C. 1.4 comment [1], 426 Mass. 1314 (1998). "A violation of a canon of ethics or a disciplinary rule . . . is not itself an actionable breach of duty to a client. . . . As with statutes and regulations, however, if a plaintiff can demonstrate that a disciplinary rule was intended to protect one in his position, a violation of that rule may be some evidence of the attorney's negligence." *Fishman* v. *Brooks*, 396 Mass. 643, 649 (1986).

suffered actual loss, and that the attorney's negligence proximately caused such loss." *Atlas Tack Corp.* v. *Donabed*, 47 Mass. App. Ct. 221, 226 (1999). None of these requisites was met by Coastal in its summary judgment filings. That is, Coastal's submissions demonstrate neither the loss element of unnecessary legal fees being incurred, nor the related proximate causation element that the unnecessary legal fees were the result of the noncommunicated settlement offer. To the contrary, the state of the record, from both sides (see note 10, *supra*), is that the settlement offer arrived after the legal fees had been expended by Coastal in litigating the arbitration. As matter of law, this negatives Coastal's claim that the legal fees were provable and proximately caused by the lawyer defendants' alleged malpractice with respect to the allegedly noncommunicated settlement offer. Thus, even if we assume that this theory of malpractice by a noncommunicated settlement offer was properly presented to the Superior Court, it was defeated by Coastal's failure to demonstrate proximately caused losses.

*Judgment affirmed.*